UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| MELODY A. FISHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:11-CV-00062 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Melody Fisher appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB").[1] (Docket # 1.) For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion.

**I. PROCEDURAL HISTORY**

Fisher was last insured for DIB on December 31, 2006 (Tr. 9), and, therefore, she must establish that she was disabled as of that date to recover DIB benefits. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). In December 2006, Fisher filed an application for DIB, alleging disability from March 26, 2006. (Tr. 112-14.) Her claim was denied initially and upon reconsideration, and Fisher requested an administrative hearing. (Tr. 9, 56-59, 63-70.)

---

[1]All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c). (Docket # 14.)

1

Administrative Law Judge ("ALJ") John S. Pope conducted a video hearing on July 7, 2009, at which Fisher, who was represented by counsel, Fisher's husband, and a vocational expert ("VE") testified. (Tr. 9, 19-53.)

On July 31, 2009, the ALJ rendered an unfavorable decision to Fisher, concluding that she was not disabled through December 31, 2006, her date last insured, because she was capable of performing her past relevant work as an invoice clerk, bookkeeper, and office manager. (Tr. 9-18.) The Appeals Council denied Fisher's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.)

Fisher filed a complaint with this Court on February 18, 2011, seeking relief from the Commissioner's final decision. (Docket # 1.) In her appeal, Fisher argues that the ALJ improperly evaluated the opinion of Dr. Thomas Lazoff, one of her treating physicians, and improperly discredited her symptom testimony. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 16-22.)

## II.  FACTUAL BACKGROUND[2]

*A.  Background*

At the time of the ALJ's decision, Fisher was forty-eight years old (Tr. 24, 112), had an associate's degree in business management (Tr. 24-25), and had previously worked as an invoice clerk, retail store owner, bookkeeper, and office manager (Tr. 25-26, 47-48). Fisher alleges that she became disabled as of March 26, 2006, due to congestive heart failure, obesity, fibromyalgia, diabetes, depression, and anxiety. (Opening Br. 2.)

---

[2] In the interest of brevity, this Opinion recounts only the portions of the 673-page administrative record necessary to the decision.

*B. Fisher's Testimony at the Hearing*

At the hearing, Fisher stated that she was 5'6" tall and weighed approximately 290 pounds. (Tr. 24.) She testified that currently sold Avon as an assistant to the district manager, making phone calls about eight hours a week and earning an average of $50 per week. (Tr. 24-27.) According to Fisher, her last job was in January 2006 as owner and operator of a gift shop with her husband, which she stopped after becoming sick. (Tr. 25.)

Fisher further stated that her congestive heart failure, fibromyalgia, arthritis, Type II diabetes, and constant pain prohibited her from standing more than two minutes without having to sit down, made walking "a chore," and required her to sit at a slant, rather than straight up, to relieve her pain. (Tr. 27.) She also testified that she could not do a lot with her right arm. (Tr. 28.) Moreover, Fisher indicated that she had pain in her neck, left shoulder, chest, hips, knees, and right wrist (though sometimes the left), and arthritis in her ankles. (Tr. 41.) She described her back pain as sharp and "very severe," amounting to a "ten out of ten." (Tr. 41-42.)

As to her limitations, Fisher stated the heaviest thing she could lift was a gallon of milk and that Dr. Lazoff, one of her treating physicians, put restrictions on her physical activities, such as performing only light lifting and sitting and moving carefully. (Tr. 31-32.) She estimated that she could not walk more than a half hour or stand for more than twenty or thirty minutes in an eight-hour day, but could sit for seven or eight hours. (Tr. 42-43.) She testified that she took a number of medications that caused side effects like drowsiness, dizziness, and headaches (Tr. 32-33), slept sixteen or more hours a day (Tr. 33), and often fell asleep during the day (Tr. 44).

### C. *The Vocational Expert's Testimony*

An impartial VE also testified at the hearing. (Tr. 46-51.) The ALJ posited to the VE a hypothetical of a person between forty-five and forty-eight years old, educated at the associate's degree level in business management, with the same past work as Fisher, who was limited to light work; could occasionally climb, balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to wetness and hazardous fumes. (Tr. 48.) The VE stated that such a person could perform all Fisher's past work, but that, if limited to sedentary work, this individual could work as only an invoice clerk, bookkeeper, or officer manager. (Tr. 47-49.) The VE further indicated that, if the ALJ found Fisher totally credible and her impairments fully supported by medical evidence, then there would not be any jobs for her because of her tendency to fall asleep during the day, ten-level pain, joint difficulty, medication side effects, and postural limitations. (Tr. 50-51.)

### D. *Summary of the Relevant Medical Evidence*

In January 2006, Fisher was diagnosed with congestive heart failure (Tr. 267, 270-71) and underwent a left and right heart catheterization, selective coronary angiography, left ventriculogram, and endomyocardial biopsy of her right ventricle (Tr. 275). On discharge, her diagnoses included new-onset congestive heart failure resolved on discharge, newly diagnosed cardiomyopathy, ejection fraction 25-35%, and right and left ventricular hypokinesia. (Tr. 279.) Later that month, Fisher saw Dr. Anthony King for a follow-up. (Tr. 291.) Dr. King diagnosed her with New York Heart Association class III stage C with systolic dysfunction of an idiopathic or potentially viral etiology, referred her to the Spine Center for evaluation of her back pain, and recommended a walking program. (Tr. 293.) Fisher saw Dr. King several more times until

4

August 2006 (Tr. 296-99, 345-46, 311-12, 314), when she reported that she had been coughing a lot, experiencing back pain and dizziness, and felt like she did when first diagnosed with congestive heart failure (Tr. 314). Dr. King found that her cardiac status was stable and that "it would be surprising if she were having a relapse." (Tr. 314.) By the end of August 2006, Fisher reported to Dr. Teresa Smith, her primary care physician, that she had been removed from the heart transplant list because her heart was getting better and that her most recent EKG was "normal." (Tr. 330.)

From August 2006 to January 2007, Fisher saw Dr. John Ott and Margaret Boswell from the Harmony Behavioral Health Group on a monthly basis. (Tr. 258.) On a "Report of Psychiatric Status" completed in January, Dr. Ott diagnosed her with major depressive disorder (single episode, moderate) and anxiety due to her congestive heart failure. (Tr. 258.) Dr. Ott noted that she had attempted to go back to work though was unable to perform her job duties due to pain and illness. (Tr. 258.) Dr. Ott then opined that Fisher was completely unable to work due to extreme pain and mental distress, but that she would have a better prognosis if she attended treatment more often. (Tr. 262-63.)

Dr. Kenneth Neville reviewed the record in January 2007 and concluded that Fisher's mental impairments were non-severe, although they co-existed with non-mental impairments that required referral to another medical specialty. (Tr. 429.) He further found that Fisher had mild restrictions in her activities of daily living and in concentration, persistence, and pace, no difficulties in maintaining social functioning, and no episodes of decompensation. (Tr. 439.) Dr. Neville rejected Dr. Ott's opinion that Fisher was "completely unable to work" because it was based on physical as well as mental limitations and Fisher's self-report of distress and was

5

inconsistent with the other information in the record.  (Tr. 441.)

Also in January 2007, Dr. M. Brill, a state agency physician, reviewed the record and opined that Fisher could lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  (Tr. 444.)  Dr. Brill concluded that no manipulative limitations, such as reaching restrictions, were established.  (Tr. 446.)

In March 2007, Fisher saw Dr. Kenneth Smith, a rheumatologist, regarding her chronic history of cervical and pelvic girdle arthralgias and myalgias.  (Tr. 479.)  After reviewing her laboratory results and X-rays and conducting a physical examination, Dr. Smith could not find evidence of an underlying inflammatory rheumatic disease and told Fisher he believed she suffered from fibromyalgia.  (Tr. 480.)

Fisher consulted with Dr. Thomas Lazoff, a pain management specialist, in May 2008, complaining of low back and neck pain (Tr. 499.)  Low back pain was her chief complaint; she described the pain as stabbing and aching, rating it as a six out of ten on a good day and a ten out of ten on a bad day.  (Tr. 499.)  According to Dr. Lazoff, she was also experiencing some posterior musculature pain in her cervical and thoracic regions and into her shoulders.  (Tr. 499.)  He diagnosed her with probable fibromyalgia and underlying degenerative changes of the sacral spine and prescribed her a low dose (50 mg) of Lyrica.  (Tr. 499.)  While they discussed epidural injections, Fisher wished to refrain from this treatment.  (Tr. 499.)  Dr. Lazoff saw her again about four weeks later and increased the amount of her Lyrica dose per day because the low dose was not helping.  (Tr. 497.)  Fisher then saw Dr. Lazoff in late June, reporting that stress caused an increase in her symptoms.  (Tr. 494.)  On physical examination, Dr. Lazoff found that she was

neurologically stable, but had decreased range of motion of the lumbar spine.  (Tr. 494.)  Dr. Lazoff subsequently increased Fisher's Lyrica dose to 75 mg, twice a day.  (Tr. 494.)  Dr. Lazoff also completed a "Restriction Worksheet" in May 2008, checking the box for "Return to Work," but putting "NA" below it.  (Tr. 498.)

In late December 2008, Dr. Lazoff completed a "Medical Questionnaire" for Fisher.  (Tr. 488-89.)  He found that she could sit, stand, or walk for at least one hour at a time and that, during an eight-hour workday, she could sit for eight hours, stand for three hours, and walk for two hours.  (Tr. 488.)  He further stated that she could frequently lift and carry up to ten pounds.  (Tr. 488.)  According to Dr. Lazoff, Fisher could use either hand for simple grasping and fine manipulation, but neither for pushing and pulling arm controls.  (Tr. 488.)  He also opined that Fisher could occasionally bend, climb, and reach, yet never squat or climb.  (Tr. 489.)  Ultimately, he concluded that she would most likely have flares interrupting her work schedule three to four times per month.  (Tr. 489.)

### III.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted).  The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard.  *Clifford v. Apfel*, 227 F.3d 863, 869

(7th Cir. 2000). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record, but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

### IV.  ANALYSIS

#### A.  *The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. §

404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, with respect to steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The ALJ's Decision

On July 31, 2009, the ALJ rendered his decision. (Tr. 9-18.) At step one of the analysis, the ALJ found that Fisher had not engaged in substantial gainful activity since March 26, 2006, through December 31, 2006, her date last insured. (Tr. 11.) The ALJ then concluded at step two that Fisher suffered from the following severe impairments: congestive heart failure, obesity, fibromyalgia, arthritis, and diabetes. (Tr. 11.) Nonetheless, at step three, the ALJ determined that Fisher's impairment or combination of impairments did not met or medically equal a listing. (Tr. 13.) Before proceeding to step four, the ALJ determined that Fisher's testimony concerning the intensity, persistence, and limiting effects of her symptoms was not credible to the extent it was inconsistent with the following RFC:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 404.1567(a), except she can only occasionally climb, balance, stoop, kneel, crouch, and crawl; and she should avoid

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

concentrated exposure to wetness and hazards.

(Tr. 13-17.)

Specifically, the ALJ found that Fisher's levels of pain and her description of her medical history had been inconsistent and her treatment for fibromyalgia—consisting of a low dose of Lyrica and a decision to forego epidural injections—indicated that her pain was not as severe and disabling as she alleged; the ALJ also pointed to the fact that Dr. Lazoff appeared to release her to sedentary past work in May 2008. (Tr. 14-16.) While the ALJ afforded Dr. Lazoff's opinion great weight, he rejected Dr. Lazoff's statement that Fisher would likely have flares interrupting her work schedule three to four times per month because he provided no indication as to the basis, extent, or nature of these flares. (Tr. 17.) The ALJ mentioned that Dr. Lazoff limited Fisher to occasional reaching (Tr. 16), but did not include this limit in the RFC (*see* Tr. 13).

At step four, the ALJ concluded that Fisher was capable of performing her past relevant work as an invoice clerk, bookkeeper, and office manager, all sedentary jobs. (Tr. 17-18.) As such, the ALJ determined that Fisher was not disabled, thereby ending the analysis without proceeding to step five. (Tr. 18.)

### C.  A Remand Is Necessary to Resolve the Conflict Between Dr. Lazoff's Opinion Concerning Fisher's Reaching Limitations and the ALJ's Step Four Finding

Fisher contends that the ALJ erred by failing to explain why he accepted or rejected Dr. Lazoff's opinion that she could only occasionally reach, which conflicted with the ALJ's finding that Fisher could perform her past relevant work as an invoice clerk, bookkeeper, and office manager, all of which require frequent reaching. (Opening Br. 17.) Fisher's argument has merit, necessitating a remand of the Commissioner's final decision.

While the Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances," *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. § 404.1527(d)(2), this principle is not absolute.  Accordingly, "a treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record."  *Clifford*, 227 F.3d at 870; *see also Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002); 20 C.F.R. § 404.1527(d)(2).  In the event the treating physician's opinion is not well supported or is inconsistent with other substantial evidence, the Commissioner must apply the following factors to determine the proper weight to give the opinion: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) how much supporting evidence is provided; (4) the consistency between the opinion and the record as a whole; (5) whether the treating physician is a specialist; and (6) any other factors brought to the attention of the Commissioner.  20 C.F.R. § 404.1527(d); *see also Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996).  The Commissioner must always give good reasons for the weight ultimately applied to the treating source's opinion.  *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ afforded Dr. Lazoff's opinion, as contained in his treatment notes, restriction worksheet, and medical questionnaire, "great weight" because he was a pain management specialist who examined and treated Fisher on multiple occasions.  (Tr. 16-17.)  The ALJ mentioned Dr. Lazoff's statement in the questionnaire that Fisher "should only occasionally bend, climb, and reach" (Tr. 16) and noted that the opinions contained in this

11

questionnaire were generally consistent with the assigned RFC and the weight of the medical evidence, with the exception of Dr. Lazoff's opinion concerning the possibility of "flares" three to four times a month (Tr. 17).[4]  The ALJ's assigned RFC, however, did not include any reaching limitations, stating that Fisher was limited to sedentary work and could only occasionally "climb, balance, stoop, kneel, crouch, and crawl."  (Tr. 13.)  Moreover, the ALJ also assigned "some weight" to Dr. Brill's January 2007 opinion (Tr. 17), which concluded that no reaching limitations were established (Tr. 446).  Therefore, Dr. Lazoff's opinion that Fisher should only occasionally reach conflicted with Dr. Brill's opinion finding no reaching limitations and with the assigned RFC, which also did not contain any reaching limitations.  Nonetheless, the ALJ failed to resolve or even address this conflict.

Although the ALJ need not discuss or make a written evaluation of every piece of evidence, he may not select and discuss only that evidence which favors his ultimate conclusion or ignore an entire line of evidence that is contrary to the ruling.  *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *Anderson v. Astrue*, No. 1:10-cv-00587-SEB-MJD, 2011 WL 3739257, at *4 (S.D. Ind. Aug. 23, 2011); *Spencer v. Astrue*, No. 1:07-CV-00132, 2008 WL 1836669, at *6 (N.D. Ind. Apr. 22, 2008).  Rather, the ALJ must review the record fairly and must articulate, at least at some minimal level, his analysis of the evidence to allow this Court to trace the path of his reasoning and to be assured that he considered the important evidence.  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *see Herron*, 19 F.3d at 333.  Accordingly, "[a]n ALJ's failure to consider an entire line of

---

[4] The ALJ apparently chose to ignore that Dr. Lazoff's opinion, which made no attempt to opine retroactively, post-dated Fisher's date last insured by two years.  Moreover, neither party addresses this fact, at least with regards to Dr. Lazoff's reaching limitations.

evidence falls below the minimal level of articulation required," *Diaz*, 55 F.3d at 307, and makes it impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence, *Golembiewski*, 332 F.3d at 917. When the ALJ fails to mention probative evidence, the Court is further left to wonder whether it was even considered. *Brindisi*, 315 F.3d at 786; *see Walters v. Astrue*, 444 F. App'x 913, 917 (7th Cir. 2011) (unpublished) ("[W]hen there is reason to believe that an ALJ ignored important evidence—as when an ALJ fails to discuss material, conflicting evidence—error exists."); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) (emphasizing that unless the ALJ sufficiently articulates his reasoning, the reviewing court cannot tell if the ALJ rejected probative evidence or simply ignored it). Furthermore, "[w]here conflicting evidence allows reasonable minds to differ, the responsibility for resolving the conflict falls on the ALJ, not the court." *Lee v. Barnhart*, No. 01 C 2776, 2003 WL 260682, at *5 (N.D. Ill. Feb. 6, 2003) (citing *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

Furthermore, on this record, the ALJ's omission cannot be viewed as harmless. *See generally Skarbek v. Barnhart*, 390 F.3d 500, 5004 (7th Cir. 2004) (concluding that an error is harmless when it "would not affect the outcome of the case"). At step four, the ALJ concluded that Fisher was not disabled because she could perform her past relevant work as an invoice clerk, bookkeeper, and office manager. (Tr. 17-18.) All of these occupations, however, require frequent reaching. *See* U.S. DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES §§ 214.382-014 (invoice clerk), 210.382-014 (bookkeeper), 169.167-034 (office manager) (4th ed. 1991). "Frequently" and "occasionally" are not synonymous and, in fact, have significantly distinctive definitions. *See* SSR 83-10 (defining "occasionally" as occurring from "very little up to one-third of the time" and "frequently" as occurring from "one-third to two-thirds of the

time"). Such unresolved inconsistencies between the abilities needed to perform past relevant work (or work identified by the VE at step five) and the claimant's limitations can warrant a remand. *See Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (remanding where there was an unresolved potential inconsistency regarding whether the jobs identified by the VE required specific physical capabilities beyond the claimant's limitations); *Perrine v. Astrue*, No. 11-cv-3045, 2012 WL 264301, at *7-8 (C.D. Ill. Jan. 30, 2012) (remanding where the court could not track ALJ's treatment of evidence regarding the claimant's ability to move his neck, which would interfere with the two light jobs the ALJ found the claimant could perform); *Dowden v. Astrue*, No. 1:11-CV-00063, 2011 WL 6322954, at *4 (N.D. Ind. Dec. 16, 2011) (remanding where the claimant's restriction to "infrequent" fingering manipulation would preclude the claimant from performing her past relevant work because the VE had testified that she could not perform this work if limited to "occasional" fingering).

Here, no reaching limitations were even included in the hypothetical that the ALJ posed to the VE, and the ALJ never acknowledged the inconsistency between his conclusion that Fisher could perform her past relevant work and Dr. Lazoff's reaching limitations. Thus, Dr. Lazoff's restriction to occasional reaching creates an unresolved conflict between Dr. Brill's opinion, the assigned RFC, and the ALJ's step four finding that must be addressed on remand.

The Commissioner argues that the ALJ is not required to discuss every piece of evidence and "clearly not every single finding on a form in detail." (Mem. in Supp. of Comm'r's Decision 11.) According to the Social Security Administration, however, "[t]he RFC assessment must . . . assess [the claimant's] work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR [§] 404.1545," SSR 96-

8p, which explicitly includes "reaching," 20 C.F.R. § 404.1545(b). While there are multiple ways to comply with this mandate, such as using a narrative format rather than a listing of each explicit finding, "SSR 96-8p is clear that such an assessment is required." *Laabs v. Astrue*, No. 10-C-1050, 2011 WL 2115902, at *4 (E.D. Wis. May 25, 2011). Here, it is unclear whether the ALJ assessed or made any finding as to Fisher's reaching ability because, while he noted Dr. Lazoff's reaching limitation, he failed to articulate whether, or why, he was accepting or rejecting that opinion, necessitating a remand. *See Walters*, 444 F. App'x at 917; *Zblewski*, 732 F.2d at 79.

For these reasons, a remand is warranted so that the Commissioner may consider Dr. Lazoff's opinion of Fisher's reaching limitations, which is inconsistent with the ALJ's findings and conclusions.[5] *See Clifford*, 227 F.3d at 869 (explaining that the court does "not reweigh the evidence, *resolve conflicts*, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner" (emphasis added)).

## IV. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this

---

[5] Fisher also contends that the ALJ erred when he rejected Dr. Lazoff's opinion that she would "most likely" have flares interrupting her work schedule three to four times per month (Tr. 489) and that the ALJ's credibility determination of Fisher's symptom testimony was not supported by substantial evidence. As the Court is remanding based on the ALJ's failure to resolve the conflict between Dr. Lazoff's reaching limitation and the ALJ's step four finding, the Court need not reach these arguments at this juncture.

Nevertheless, as to Fisher's symptom testimony, while an ALJ's credibility determination is reviewed with special deference and upheld unless it is patently wrong, *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010), the Court notes some parts of the ALJ's decision that should be revisited on remand. For instance, the ALJ should examine the full record for Fisher's pain level reports. While the ALJ criticized Fisher's report of level "10" pain at the hearing as being inconsistent with the record (Tr. 14), the record reflects that Fisher did indeed report level "10" pain to her medical providers on occasion (*see* Tr. 367, 452, 499). Furthermore, the ALJ should inquire into the reasons for Fisher's failure to pursue certain treatment for her fibromyalgia. *See Craft v. Astrue*, 539 F.3d 668, 678-79 (7th Cir. 2008).

Opinion. The Clerk is directed to enter a judgment in favor of Fisher and against the Commissioner.

    SO ORDERED.

    Enter for this 9th day of February, 2012.

                                                S/Roger B. Cosbey
                                                Roger B. Cosbey,
                                                United States Magistrate Judge